**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS DEPALMA, PAUL MACCHIA, and MAULIK SANGHAVI,<br><br>                      Plaintiffs,<br><br>     v.<br><br>NEW JERSEY TURNIPKE AUTHORITY, et al.,<br><br>                      Defendants. | Civ. Action No. 20-03210 (FLW)<br><br>**OPINION** |

**<u>WOLFSON, Chief Judge:</u>**

      This is an action for wrongful termination based on violations of federal and state civil rights laws and for breach of contract and common law wrongful termination. Plaintiffs, Nicholas DePalma, Paul Macchia, and Maulik Sanghavi (collectively, "Plaintiffs") are three aggrieved former in-house attorneys at the New Jersey Turnpike Authority (the "NJTA"), who were hired during the prior Republican gubernatorial administration. They have filed suit against the NJTA and its senior leadership (collectively "Defendants"),[1] asserting that they were wrongfully discharged by the incoming Democratic administration in retaliation for their perceived political

---

[1]     The following senior officials of the NJTA are named as defendants, in both their individual and official capacities: Philip Murphy, Governor of the State of New Jersey; Diane Gutierrez-Scaccetti, Chair of the NJTA Board of Commissioners ("NJTA Board") and *ex officio* Commissioner on the NJTA Board; Mary-Elizabeth Garrity, Director of Human Resources for the NJTA; Ronald Gravino, Vice Chairman of the NJTA Board; Michael R. DuPont, Treasurer of the NJTA Board; Raymond M. Pocino, Commissioner on the NJTA Board; Ulises E. Diaz, Commissioner on the NJTA Board; John D. Minella, Commissioner on the NJTA Board; Raphael Salermo, Commissioner on the NJTA Board; and John O'Hern, Deputy Executive Director and Acting Executive Director of the NJTA.

1

affiliation with the Republican party, contrary to the First Amendment of the United States Constitution and analogous state constitutional provision.

Presently before the Court is Defendants' motion to dismiss Plaintiffs' complaint, in its entirety with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] In their motion, Defendants argue that Plaintiffs' constitutional claims fail as a matter of law, because Plaintiffs were employed in positions that entailed "advisory" or "policymaking" functions. In this regard, Defendants contend that, under Supreme Court and Third Circuit jurisprudence, such roles necessarily require political affiliation as a condition of employment and, therefore, are not protected by the First Amendment of the United States Constitution and analogous provisions in the New Jersey Constitution. In response, Plaintiffs contend that political affiliation is not a requirement for the position of an in-house attorney with the NJTA and that, in any event, a determination by the Court that their responsibilities included "advisory" or "policymaking" functions would be premature at the pleading stage. I have considered the parties' submissions and have decided this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, I find that Plaintiffs have sufficiently stated claims for violation of the United States and New Jersey Constitutions (Counts I and II) and for breach of contract (Count III); however, I find that Plaintiffs have abandoned their claim for common law wrongful termination

---

[2] In their motion, Defendants alternatively request that this Court enter summary judgment in Defendants' favor and dismiss Plaintiffs' claims pursuant to Rule 56. Although a party may move for summary judgment prior to the conclusion of discovery, courts often deny such motions as premature where, as here, there has been no opportunity for discovery and the parties disagree about material factual issues. In this case, Defendants themselves applied for and obtained an order staying discovery based upon their intention to file a motion to dismiss. (*See* ECF Nos. 10, 13). As such, the parties have not had any opportunity to conduct discovery in this case. The parties also appear to disagree about key factual issues, *i.e.*, the nature and scope of the in-house counsel positions at issue. Under these circumstances, I find that summary judgment at this stage of the litigation would be premature. Accordingly, I deny Defendants' motion to the extent it seeks relief under Rule 56. Defendants may move for summary judgment after the parties have been afforded a sufficient opportunity for discovery.

(Count IV), by failing to oppose Defendants' motion with respect to that claim. Accordingly, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs allege that they were each hired as in-house attorneys in the NJTA's Law Department on separate dates between October 2015 and November 2016, during the Republican administration of Governor Christopher J. Christie, and that they were employed in those positions until they were each terminated, effective March 9, 2018. (Compl. ¶¶ 15-16, ECF No. 1-1.) Plaintiffs further allege that they "were routinely and explicitly advised throughout their employment with NJTA . . . [that] they occupied non-policy making positions which did not require political affiliation." (*Id*. ¶ 18.) According to Plaintiffs' complaint, "[t]hroughout their employment, [P]laintiffs were not at-will employees and were protected by a duly-executed agreement with the NJTA, in which the NJTA was obligated, among other things, not to discriminate against [P]laintiffs on the basis of their political affiliation." (*Id*. ¶ 25.) In their papers in opposition to the present motion, Plaintiffs clarify that they are referring to a collective bargaining agreement ("CBA"), which was entered into between NJTA and a labor union, Local 3914 of the American Federation of State, County, and Municipal Employees ("AFSCME 3914"). (*See* Pls. Opp. Br at 29-30.)[3]

Plaintiffs' complaint contains myriad allegations regarding the nature and scope of their positions as in-house attorneys in the NJTA's Law Department. For example, Plaintiffs submit that they "lacked the authority to make final decisions and only performed basic lawyering

---

[3]     I note that, although Plaintiffs cite to specific provisions from the CBA in their opposition papers, they did not attach a copy of that document. Rather, a copy of the CBA was provided to the Court by Defendants with their motion papers. (*See* Abbate Cert., Ex. F (Agreement between Local 3914 and New Jersey Turnpike Authority), ECF. 15-8.)

functions such as drafting real-estate contracts, reviewing documents, proof-reading, and offering task-related information to their superiors." (*Id.* ¶ 18.) Plaintiffs further maintain that they "exercised very little discretion and influence over their work product," that "their assignments merely required an objective, neutral application of the already-established laws and regulations of the NJTA," that "their work product was always subject to the final review and approval of their supervisor(s)," and that they "were heavily supervised and compelled to abide by strict reporting and productivity requirements." (*Id.* ¶ 19.) Plaintiffs also insist that they "did not have the ability to influence policy or policy-makers," that they "were completely isolated, both physically and in their work-load, from policy-making individuals and processes at the NJTA," and that they "very seldomly engaged in conversation with policy-makers." (*Id.* ¶ 21.) Finally, Plaintiffs assert that they "occupied low-level positions, had no subordinates or individuals that reported directly to them, and lacked the authority to hire and fire employees of the NJTA." (*Id.* ¶ 23.)

On November 7, 2017, defendant Philip D. Murphy, a Democrat, was elected to replace Governor Christie, a Republican, as the next Governor of the State of New Jersey. According to Plaintiffs' complaint, during November 2017, the incoming "Murphy Administration started developing and/or implementing its plan for the transition of cabinet members, policies, and agenda." (*Id.* ¶ 27.) After the new administration was formally sworn-in on January 16, 2018, Plaintiffs allege that, "defendant Murphy and his administration[] initiated a partisan, vengeful plan to oust all NJTA Law Department employees who were Republican and/or perceived supporters of former Governor Chris Christie, regardless of employment level." (*Id.* ¶ 30.) Plaintiffs further allege that the "Murphy Administration, acting through the Chair of the NJTA Board, in an effort to suppress dissenting voices and violate the First Amendment, initiated a politically-partisan purge of NJTA employees whom defendants suspected would not politically

4

support defendant Murphy and/or the new NJTA administration under defendant Murphy." (*Id*. ¶ 31.)

On or about February 26, 2018, Plaintiffs each received letters of termination from the NJTA. (*Id*. at 32.) The termination letters stated, in pertinent part:

> [y]our position with the New Jersey Turnpike Authority ("NJTA") as "Attorney" is a policymaking and advisory position. As a result of the change in administration of NJTA, your employment with NJTA will be terminated effective March 9, 2018. This termination is not for disciplinary reasons.

(*Id*. ¶ 32.) Plaintiffs allege that, in making the decision to terminate them, "[D]efendants were aware of [P]laintiffs political affiliation and knew they were hired by the NJTA Law Department during former Governor Chris Christie's administration." (*Id*. ¶ 39.b.; *see also id*. ¶ 16.) Plaintiffs further allege that "a few others in the NJTA Law Department, all of whom were Republican and/or perceived supporters of Governor Chris Christie, were terminated effective March 9, 2018, while others in the NJTA Law Department, who were not Republican and/or perceived supporters of Governor Chris Christie, were not terminated." (*Id*. ¶ 34.) In their complaint, Plaintiffs claim that "[t]he[se] facts clearly indicate that [Defendants] made the decision to terminate [P]laintiffs based on [their] political affiliation." (*Id*. ¶ 39.) Plaintiffs also claim that, "[t]hroughout their employment, [P]laintiffs each maintained an unblemished and stellar employment record with excellent reviews and no disciplinary citations." (*Id*. ¶ 24.)

On February 26, 2020, Plaintiffs initiated this action with the filing of a Summons and Complaint in the Superior Court of New Jersey, Law Division, Monmouth County. Subsequently, Defendants removed this action to federal district court on the basis of federal question jurisdiction. Plaintiffs assert four counts in their complaint. In Counts I and II, Plaintiffs assert claims under 42 U.S.C. § 1983 and N.J.SA 10:6-2, alleging, in both counts, that "[D]efendants intentionally deprived [P]laintiffs of their constitutional right[s] to freedom of speech and association by

5

terminating them from their positions as non-policy making employees based on their political affiliation." (*See id.* ¶ 42-45 (First Cause of Action); *id*. 46-49 (Second Cause of Action). In Count III, Plaintiffs asserts a claim for breach of contract, alleging that Defendants "breached the executed, written Agreement," *i.e.*, the CBA, "by discriminating against plaintiffs on the basis of their political affiliation." (*Id.* ¶ 50-52 (Third Cause of Action).) In Count IV, Plaintiffs assert a claim under New Jersey common law for wrongful termination, alleging that "NJTA violated its duty as an employer not to discharge an employee in violation of a clear mandate of public policy, namely the public policy to protect public employees' Constitutional right to freedom of speech and association." (*Id*. ¶ 53-57 (Fourth Cause of Action).)

On May 29, 2020, Defendants filed the present motion to dismiss Plaintiffs' complaint. With respect to Counts I and II, Defendants argue, *inter alia*, that "Plaintiffs served in a facially consultative and advisory role[,] and[,] as such[,] their claims of political status retaliation fail as a matter of law." (Defs. Opening Br. at 10-21; *see also* Defs. Reply Br. at 3-8. As to Count III, Defendants contend that "Plaintiffs' breach of contract claim fails because their collective bargaining agreement renders them at-will employees." (Defs. Opening Br. at 22-23; *see also* Defs. Reply Br. at 8-9.) With respect to Count IV, Defendants argue that "Plaintiffs' claim of common law public policy violation is derivative of their civil rights claims and should likewise be dismissed." (Defs. Opening Br. at 23-24.)

On June 23, 2020, Plaintiffs filed their opposition to Defendants' motion. With respect Count I and II, Plaintiffs contend, *inter alia*, that "Defendants' motion to dismiss should be denied because it is premature and the factual allegations in Plaintiffs' complaint sufficiently establish a *prima facie* case of discrimination based on political affiliation." (Pls. Opp. Br. at 7-16.) Plaintiffs further argue, with respect to Count III, that they "were not at-will employees," because they were

protected by certain provisions in their employment agreement with NJTA—specifically, Article 6 of the CBA, which states that "there shall be no discrimination against any employee because of . . . political affiliation." (*Id.* at 29-30.) Plaintiffs did not address Defendants' arguments with respect to Count IV in their opposition.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must set forth enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the merits of a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and view those facts in the light most favorable to the plaintiff. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

## III.    DISCUSSION

### A.     Counts I and II – Political Affiliation Discrimination

Plaintiffs' claims in Counts I and II of the Complaint assert causes of action for political affiliation discrimination in violation of, respectively, the First Amendment of the United States Constitution and analogous state constitutional provisions. (Compl. ¶¶ 42-49) In their motion papers, Defendants argue that "New Jersey courts . . . 'rely on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution.'" (Defs. Opening Br. at 14 (quoting *Hamilton Amusement Center v. Verniero*, 156 N.J. 254, 264-65 (1998)).) Therefore, according to Defendants, "the first two counts of the Complaint are identical and are fully

7

addressed by the applicable federal case law." (*Id.*) I agree, and, accordingly, I will analyze both Counts I and II with reference to federal law.

The general contours of a claim under federal law for discrimination based on political affiliation has its origins in a trilogy of "political patronage cases" decided by the United States Supreme Court. *See Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990). In *Elrod*, a plurality of the Supreme Court stated that "[p]atronage dismissals severely restrict political belief and association . . . , [which] constitute the core of those activities protected by the First Amendment," and, thus, the government may not, without seriously inhibiting First Amendment rights, force a public employee to relinquish his right to political association as the price of holding a public job. 427 U.S. at 353-360. The *Elrod* court further explained that that patronage dismissals must be limited to public employees occupying "policymaking" positions; however, the court noted that "[n]o clear line can be drawn between policymaking and nonpolicymaking positions." 427 U.S. at 367. In *Branti*, the Supreme Court refined its holding, explaining: "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518. In *Rutan*, the Supreme Court extended the *Elrod-Branti* doctrine, holding that the First Amendment protects public employees not only from politically motivated discharge, but also from promotion, transfer, recalls, and other hiring decisions conditioned on political affiliation, unless the government can demonstrate that party affiliation is a proper requirement for the position. 497 U.S. at 75. *See also Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007) (discussing *Elrod*, *Branti*, and *Rutan*).

From these cases and their progeny, the Third Circuit has derived a number of factors that courts are required to consider in evaluating whether a public employee is employed in a "policymaking" position and, thus, may be dismissed based on political affiliation. These factors include: "whether the employee has duties that are non-discretionary or technical, participates in discussions or other meetings, prepares budgets, possesses the authority to hire and fire other employees, has a high salary, retains power over others, and can speak in the name of policymakers." *Galli*, 490 F.3d at 271 (citing *Brown v. Trench*, 787 F.2d 167, 169 (3d Cir. 1986)).[4] The Third Circuit has suggested that the "key factor" is whether the individual "has meaningful input into decisionmaking concerning the nature and scope of a [ ] program." *Id*. (quoting *Armour v. County of Beaver, PA*, 271 F.3d 417, 429 (3d Cir. 2001)). The Third Circuit has also emphasized that courts must look to "'the function of the public office in question and not the actual past duties of the particular employee involved,'" although "evidence of past job duties may in some cases be informative." *Wetzel v. Tucker*, 139 F.3d 380, 384 (3d Cir. 1998) (citing *Brown*, 787 F.2d at 168); *see also Siss v. County of Passaic*, 75 F.Supp.2d 325, 338 (D.N.J. 1999) ("The proper analysis focuses on the responsibilities of the position in question, regardless of whether one in that position could conceivably operate in a limited or technical manner, or whether the plaintiff actually did so under a previous administration.")

---

[4] I note that this list of factors appears to be non-exhaustive. For example, in a different opinion, the Third Circuit listed the following additional factors that may also be relevant, including:

> [1] whether an employee is a "nonpolicymaking, nonconfidential government employee," . . . [2] whether a difference in party affiliation would be "highly likely to cause an official to be ineffective in carrying out" the duties of the position, . . . [3] whether "the employee has meaningful input into the decision making concerning the nature and scope of a major . . . program," . . . or [4] whether the employee "acts as an advisor or formulates plans for the implementation of broad goals."

*Boyle v. Cty. of Allegheny Pennsylvania*, 139 F.3d 386, 396 (3d Cir. 1998).

Having evaluated Plaintiffs' complaint in light of the relevant case law, I find that Plaintiffs' complaint contains sufficient factual allegations to support a reasonable inference that their positions as in-house counsel at the NJTA were not "policymaking" positions. As alleged in their complaint, Plaintiffs lacked the authority to hire and fire employees, they did not prepare budgets or influence the budget of the NJTA, they lacked the authority to execute contracts and make final decisions, they were required to obtain final review and approval of their work, and they did not regularly influence, communicate, or collaborate with senior officials in the NJTA who developed policy. (*See* Comp. ¶¶ 18-23.) In addition, with respect to the "key factor" announced in *Brown*, Plaintiffs' complaint contains factual allegations which demonstrate, assuming them to be true, that Plaintiffs did not have meaningful input into the overall decisionmaking of the NJTA. Rather, Plaintiffs allege that they were afforded very little discretion in their roles as in-house counsel and lacked the ability to influence the policymaking functions of the NJTA. (*See* Comp., ¶¶ 18-20.) These allegations are sufficient at the pleading stage to establish that Plaintiffs were not engaged in "policymaking" functions in their positions as in-house counsel at the NJTA. Accordingly, Defendants' motion to dismiss is **DENIED** with respect to Counts I and II for political affiliation discrimination.[5]

---

[5] In support of their motion, Defendants attach a number of exhibits that appear to be extraneous to Plaintiffs' complaint, including a document that Defendants refer to as the "job description" for in-house attorneys at the NJTA. (*See* Defs. Opening Br. 6-7 (*quoting* Abbate Cert. at Exh. E (NJTA Position Description for Attorneys))). That document is not referenced anywhere in Plaintiffs' complaint, nor is it relied upon by Plaintiffs to support their claims. Accordingly, I find that it is not appropriate for me to consider that document or other extraneous exhibits in deciding the present motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). If, after an opportunity for discovery has been afforded, Defendants opt to file a motion for summary judgment, *see supra* note 2, they may rely upon this document at that time.

### B.  Count III – Breach of Contract

In Counts III of their complaint, Plaintiffs assert a claim for breach of contract, alleging that NJTA breached "the executed, written Agreement, *i.e.*, employment contract, that it entered into with plaintiffs, by discriminating against plaintiffs on the basis of their political affiliation, which was expressly prohibited by the contract." (Compl. ¶ 51.)  In their papers in opposition to the present motion, Plaintiffs elaborate on their breach of contract claim, asserting that Defendants breached Articles 3 and 6 of the CBA between the NJTA and AFSCME Local 3914.  Article 3 of the CBA states, in relevant part: "It is mutually understood and agreed that the Employer retains the prerogative of management, including but not limited to the rights of hiring, suspending, disciplining or discharging for proper or just cause . . . ." (Pls. Opp. Br. at 30.)  Article 6 of the CBA states, in relevant part: "The Employer and the Association duly understand and agree that there shall be no discrimination against any employee because of . . . political affiliation." (*Id.*) According to Plaintiffs, Articles 3 and 6 of the CBA, when read together, "clearly protect them from being discharged without just cause and from being discriminated against for their political affiliations." (*Id.*)

In their motion to dismiss, Defendants contend that Plaintiffs' claim for breach of contract should be dismissed, because, under the CBA, Plaintiffs were mere "at-will" employees who "served at the pleasure of the administration" and were "subject to discharge for any lawful reason." (Defs. Opening Br. at 2, 22.)[6]  More specifically, Defendants contend that, pursuant to Article 29 of the CBA, employees such as Plaintiffs—who were retained in the position of

---

[6]  I note that, at least for the purposes of the present motion, Defendants have assumed that Plaintiffs were members of AFSCME Local 3914, and, therefore, presumably are entitled to sue under the CBA for breaches of that agreement. (*See* Defs. Opening Br. at 7 ("As in-house attorneys, Plaintiffs were members of Local 3914 . . . ."))

11

"Attorney"—are not entitled to take part in the multi-step, administrative grievance procedure set forth in Article 29 for disputing disciplinary decisions. Defendants suggest that this means Plaintiffs could be terminated for any lawful reason, regardless of whether there was any disciplinary reason for doing so. In making this argument, however, Defendants appear to ignore the language in Article 3 of the CBA, which limits the NJTA's ability to "discharge[e]" employees only "for proper or just cause." Unlike Article 29, Article 3 does not contain any carveout for employees with the "Attorney" title, and Plaintiffs contend that Article 3 applies to them regardless of whether or not they were also allowed to participate in the Article 29 grievance process. This being the case, it would appear that Plaintiffs were not, as Defendants assert, mere "at-will" employees, but rather could be fired only "for proper or just cause."

Defendants also argue that Plaintiffs' claim for breach of contract should be dismissed, because Article 6 of the CBA "does not state any independent contractual claim or standard of review separate and apart from existing civil rights law." (Defs. Opening Br. at 22; *see also* Defs. Reply Br. at 9 ("The contractual language in Article 6 of the collective bargaining agreement should be interpreted consistent with existing civil rights law.").) In support of this proposition, Defendants cite to my opinion in *Pasqua v. County of Hunterdon*, 2016 WL 4253958 (D.N.J. 2016) (Wolfson, J.), where the plaintiff, a county employee, accused the county government of terminating the plaintiff for political reasons in violation of N.J.S.A. 40A:9-25. That statue provides, in relevant part, that "[n]o officer or employee shall be removed from his office or position for political reasons." N.J.S.A. 40A:9-25. Noting that this language lacked a clear standard for enforcement and had not previously been interpreted by any state court, I held in *Pasqua* that, "in the absence of other guiding state case law, it is appropriate to apply the test for constitutional political discharge to determine whether Plaintiffs have been removed from their

12

offices 'for political reasons.'" 2016 WL 4253958, at *10. I then applied the Supreme Court's test for political affiliation discrimination from *Elrod* and *Bratti*, discussed above, to the plaintiff's statutory claim. Here, Defendants argue that, like the statutory language in *Pasqua*, "the contractual language in Article 6 of the collective bargaining agreement should be interpreted consistent with existing civil rights law, is entirely derivative and should be dismissed for" the same reasons that it argues that Counts I and II should be dismissed. (Defs. Opening Br. at 23.)

In this case, consistent with *Pasqua*, I find that Plaintiffs' claim for breach of contract in Count III is derivative of their claims for political affiliation discrimination in Counts I and II. In other words, Plaintiffs' claim for breach of contract is directly contingent upon the ultimate resolution of any claims for political affiliation discrimination. Furthermore, because I conclude above that Plaintiffs have sufficiently stated claims for political affiliation discrimination, I necessarily find that their claim for breach of contract also survives at this stage of the litigation. Accordingly, Defendants' motion to dismiss is **DENIED** with respect to Count III.

  **C.** <u>**Count IV – Common Law Wrongful Termination**</u>

In Counts IV of their complaint, Plaintiffs assert a claim under New Jersey common law for wrongful termination. In their motion, Defendants argue that Plaintiffs' wrongful termination claim "is entirely duplicative of a claim for a civil rights violation, as alleged in the first and second counts of the Complaint" and, therefore, should be dismissed. (*See* Defs. Opening Br. at 23-24.) In their opposition papers, Plaintiffs do not address Defendants' arguments or otherwise oppose Defendants' motion with respect to Count IV. Given Plaintiffs' failure to offer any opposition, Defendants' motion to dismiss is **GRANTED** with respect to Count IV for common law wrongful termination. *See Person v. Teamsters Local Union 863*, 2013 WL 5676739, *4 (D.N.J. 2013) ("Where a party only defends a subset of claims in opposition to a dispositive motion, the Court will construe those claims that were not defended as abandoned."); *Cicchiello v. Beard*, 726

F.Supp.2d 522, 531 (M.D. Pa. 2010) ("Plaintiff's failure to address this claim in her brief in opposition constitutes an abandonment of the claim."); *Carraway v. Borough of Wilkinsburg*, 2009 WL 2981955, at *2 (W.D. Pa. Sept. 11, 2009) ("The Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal quotation marks omitted). *C.f. Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (noting that "[t]here may be some cases where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney.")

### IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motion is **DENIED** with respect to Counts I, II, and III.  Defendants' motion is **GRANTED** with respect to Count IV.  An appropriate Order accompanies this Opinion.

DATED:  November 13, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge